Thank you. May it please the court, Steven Bedrick for Mr. Carrera. I'd like to reserve four minutes for rebuttal. Just watch the clock, counsel. Thank you. I'm going to discuss two issues. The Batson issue as discussed in AOB Section 1 and the confrontation issue as discussed in AOB Section 2. The first issue is a combination of racial discrimination in jury selection under Batson and ineffective assistance of counsel under Strickland. When this case was tried in 1983. Counsel, this case was tried before Batson existed. Yes. It was tried under Wheeler. That's correct, your honor. Were there some differences between Wheeler and Batson? There were. There may have been at one point, but the U.S. Supreme Court and this court have regularly considered Wheeler challenges and Batson challenges to be equivalent, if not identical. Does that mean Batson is retroactive? Batson has been retroactive to all cases which were not final when Batson was decided in 1986. This case was final in 1989. I'm puzzled that you're taking that position. In Wheeler, once a prima facie case is found by the trial court, the burden goes on the prosecution to give a race neutral explanation. Yes. If the prosecution does not, under Wheeler, does not come up with any explanation at all, as the prosecution has not in this case since five out of six of the peremptories that were taken, the burden is no longer on the challenging defendant as it remains in Batson. So I would say that Wheeler is to your advantage. But are you willing to concede that and say that the only issue here is Batson? No, your honor. I don't see, I respect, I don't see any significant difference between the two cases on that particular principle, because this court said in Paulino 2 and the U.S. Supreme Court said in Johnson v. California that if the challenging party does not present an explanation at level at step two, then most of the time, most likely, the court is going to find that there has been racial discrimination. But the burden still applies to the defendant over here, the petitioner. Yes. But in Wheeler, the burden stops applying to the petitioner. If you don't find any difference in that observation, then please continue with your presentation. It appears equivalent to me, and in this Court, we need to follow the U.S. Supreme Court as well as the California Supreme Court. But let me back up a minute. You know, Strickland also says this is not a straight Batson case. This is a Strickland case. And Strickland says that if the challenging  the court is going to find that there has been racial discrimination in judging effectiveness of counsel. We have to look at the law as it existed at the time of trial. So that principle seems to conflict with another principle on which you rely, that is, pending direct appeal, right? But this is not a straight Batson case. This is an ineffective assistance. So how do we choose between those two principles? I guess I don't the Court can guide me some. I don't see any significant difference there. In California, if this case, this appeal, this case was tried in 1983, the appeal was decided in 1989. I think you're inferring that this attorney should have known that Batson would be decided umpteen years after this all happened. No, Your Honor. This attorney knew that Wheeler was the law. This attorney didn't need to know anything about Batson one way or the other. The California courts had decided four And then People v. Allen in 1979 and People v. Fuller in 1982, which all followed Wheeler and said that if their trial counsel has the right and the duty to make an objection when the prosecutor preemptory challenges most or all of the minority jurors. Well, in this case, two minorities actually served on the jury. That's correct. That would not have protected the prosecutor at the time when he made this challenge in 1983. And why not? The only two cases my opponent cites which say that the presence of minorities on the jury would block the finding of a prima facie case are intermediate state court decisions made in 1985. So they're decided after this trial. They were not the law when this case was tried. And in addition, those cases were overruled by the California Supreme Court in 1987. Therefore, those cases were not good law when this case was tried, and they were not good law when this case was heard on appeal. So you're saying that we apply a percentage, six out of eight, for example, fails, whereas two out of eight would not? The California Supreme Court said in Wheeler that to establish a prima facie case, a party, quote, may show that his opponent has struck most or all of the members of the identified group from the veneer or has used a disproportionate number of his preemptories against the group. Well, but let me go back to I think it was Judge Bay's question, either his or Judge Ken's, but what do we do with the fact that on this record there's no way to determine the reason for the DA's preemptory challenges? That is not the fault of the defendant, nor should that be held against the defendant. This Court has stated that where the prosecutor fails to give a reason, that is evidence of pretext. This Court has said when the prosecutor does not remember. No, but our cases don't apply on this AEDA appeal. I'm sorry, Your Honor, this is not an AEDPA case. This is a pre-AEDPA case. Pre-AEDPA. This habeas petition was filed several years before AEDPA was adopted. So this is not a habeas. So our cases, it's your cases. So you're saying under Ninth Circuit cases, what, there's like a presumption? Is that what it amounts to? The prima facie case, under the three-step test in VATSA, the first step is, does the defendant establish a prima facie case? I think the answer here is indisputably less, yes, under both California law and People v. Snow. Is that true also under Wheeler? Wheeler, yes, also under Wheeler. Wheeler says a prima facie case is established when the opponent has struck, I'm quoting, has struck us for all. No, I'm talking about the next step after a prima facie case. Prima facie case, the next step requires the prosecutor to establish a race-neutral reason. And under Wheeler, the prosecutor has a burden? Yes. So are you saying it's not met in this case because the prosecutor didn't produce any evidence? I am saying that under Wheeler, it appears that if the prosecutor doesn't give a reason, then the court will find racial discrimination. Don't you have to go one step beyond that? The reason the prosecutor didn't give a reason was because there was no challenge. Your Honor, I respectfully disagree. The reason the prosecutor did not give a reason, a race-neutral reason, was because there were not any. He didn't try to make them up afterward because there weren't any. What is one of the things that is striking in this case is the prosecutor's notes of voir dire. They're gone. They're missing. Didn't he say he didn't make any? No, Your Honor. He said there are no notes of voir dire currently in my file. And it was not my practice, quote, to memorialize the reasons for my decisions. We use the word memorialize to write down something that happened before. Isn't that the same thing as saying he didn't take any notes? No, Your Honor. Absolutely not. What we have here is if we were to look at civil law, they're very clever at pleading. You plead something and the opponent pleads something else and you say he didn't deny this, he didn't deny this, didn't deny this, and didn't deny this. We argue that the prosecutor had notes, used notes, and they were discarded. The prosecutor filed a declaration in which he failed to deny that he had notes, he failed to deny that he used notes, and he failed to deny that his office threw the notes away. In this case, voir dire lasted 10 days. They looked at 120 jurors. There's more than 1,000 pages of reporters' transcripts. And there is not ñ it was humanly impossible for anybody to do any kind of voir dire along these lines without taking notes. Mr. President? May I ask you, is there a single Ninth Circuit court case which you could cite to me that holds that Wheeler error, such as you assert occurred here, does not require any further proof, as far as an effective system of counsel, of prejudice under the second prong of Strickland, and is, in effect, structural error which officiates the verdict? The short answer to this question is no. This circuit has not decided that issue in so many words. Second question. Any Supreme Court case that you can cite to me? In Strickland, the Supreme Court discusses various types of ineffective assistance, and it states that for most trial court errors, the standard of prejudice is a reasonable probability of a different result. The Supreme Court also says there is an exception, and lists as exceptions cases where the error is what we come to know as structural error. And they refer to conflict of counsel, they refer to denial of counsel, and a critical stage. But that's not implied in this case. No, it's not implicated, given the facts of this case. Well, first of all, Batson is not mentioned in Strickland because Strickland was decided first. Strickland was decided in 83 or 84, and Batson was decided in 86. So there's no Supreme Court case that says that this is structural error. Informalante, right? Batson says that a Batson error is structural error. There are several – there are two circuit courts of appeal – there are three circuit courts of appeal that have discussed the question of whether a Batson error – sorry, whether the failure to make a Batson motion is prejudicial per se. The Third Circuit in Governor of Virgin Islands v. Forty and the Eleventh Circuit in Eagle v. Lenehan have said that ineffective assistance of counsel to raise a Batson motion is prejudicial per se. In Batson, was there a challenge? There was, wasn't there? Yes, there was. But here there was no challenge. Does that make a difference? That's correct. So this differs from Batson because it's ineffective assistance. But this Court in bank case, in U.S. v. Onagoni, cited in the supplemental authorities letter we filed last week, had the question before of whether in direct appeal a Batson error was prejudicial per se or whether prejudice had to be shown in the facts of the case. And this Court decided that it was prejudicial per se. And the reason is because, quote, unlike typical trial errors, this error did not occur during the presentation of the case to the jury. And, quote, unlike the error in Fomenanti, this error may not be quantitatively assessed in the context of other evidence presented in order to determine whether its admission was harmless. And what is the error, counsel? Is the idea that a Hispanic defendant will be treated more kindly if Hispanics are on the jury? The error here is that it violates the equal protection clause to challenge jurors because of their race. And under Batson, Batson is different than most other cases. Batson exists not just to protect the defendant. Batson exists for the purpose of vindicating the rights of minority jurors. And those rights would not be vindicated if we were – if this Court were to carve out from the Batson cases an exception for situations where trial counsel should have made a Batson or Wheeler motion but did not and was ineffective. So there would be no error if the minority jurors simply waived their right to serve. That was certainly not the law now. That was not the law then. That wasn't the law under Wheeler. That wasn't the law under Batson. This is – if the minority jurors wanted to waive their right to serve, they wouldn't show up. They'd say, hardship, hardship. They'd say, Judge, I don't want to be here. No evidence that these jurors did that. They participated in voir dire properly. They were at court. From all we can tell from the record, they wanted to be there. This is not a right the minority jurors – there's no law. So it's the jurors' rights that you're vindicating, not so much Mr. Carrera's rights. Under Wheeler, the rights that are vindicated are those of the defendant. Under Batson, the rights that are vindicated are partially that of the defendant, but mostly those of the jurors. But under Wheeler also, under State law, Wheeler error is what the California Supreme Court calls per se error. Yes. In other words, the same as structural error. Yes. Now, where does Snow – sorry, excuse me. You have a second point? You only have four minutes left. Your Honor, I asked a question about Snow. Where does Snow – you brought up Snow. Where does Snow fit into this picture? If trial counsel had made a Wheeler motion, two things would have happened. The trial judge would have granted it. The trial judge would have denied it. If the trial judge granted it, we'd have a new – and the prosecutor had no reasons, we'd have a new jury. If the trial court denied it, and this case went up on appeal, in 1989, the law in California under People v. Snow was that there was a prima facie case of racial discrimination when the prosecutor challenged six out of eight minority jurors. Yes, but I thought that was simply something to be taken into account. That wasn't a per se ruling. Was it in Snow? Those were the only facts in Snow. Eight minority jurors. Prosecutor challenged six. Therefore, there's a prima facie case. And the remedy in California for the failure – for the incorrect denial of a prima facie case was reversal and a new trial, prejudicial per se. Snow also is the case that overruled those court of appeal cases. That's correct. So those court of appeal cases had a life of about a year and a half. They weren't the law when this case was argued, and they weren't the law when this case was heard on appeal. If this case were heard, the trial counsel had made a – Batson had made a Wheeler motion, and if the trial court had denied it on appeal, this would have been a slam dunk in favor of the defendant under People v. Snow because the facts were identical. Counsel, you're down about three minutes plus. I guess then I'll try to argue one minute. Thank you. The Court has asked lots of good questions. I'll try to spend one minute talking about the Confrontation Clause error. Very well. The error here is elemental. We may have had a situation where the key witness, Santana, was testifying on the basis of what the non-testifying co-defendant told him. If that was the case, then we have Confrontation Clause error. It may be that Santana testified at the co-defendant's trial that he heard the whole story from the co-defendant. If he then – we were blocked.  Well, this is – this is subject to harmless error review, right? Yes, this is subject to harmless error review, but I don't think we're there yet, Your Honor, because we have been blocked from showing what Santana told – from whom Santana heard his story. We've been totally blocked. So I think what we need here is an evidentiary hearing, some discovery, look at the police reports, see what Santana said that – who told him the story, when they told him the story, and then the district court can, with those facts in front of them, make his finding as to whether there was prejudice. I'll try to reserve my last minute and a half. You may do so, counsel. We'll hear from the State. Good morning, Your Honors. I think – Please introduce yourself to the right. Cliff Zoll from the Attorney General's Office for the Respondent. Good morning. As I think the Court has noted, I think the key thing here is that – and I'll address most of my remarks to the Batson claim. And again, I misspoke because, as the Court has noted, this is not a Batson-Wheeler claim. This is an ineffective assistance of counsel claim. And that is fundamentally different. Whether Batson or Wheeler has a structural error, whether it's per se reversible, this is not a Batson-Wheeler claim. This is an ineffective assistance of counsel claim. You have two prongs, as the Court is well aware, for an ineffective assistance of counsel claim. You have to show deficient performance by counsel. Counsel's interest is in her client. How do we know that if counsel had made a Wheeler motion, it would have benefited her client? Well, there are some. On the deficient performance of counsel, there are two things I'd like you to address. Number one, if I remember the record completely, there is an affidavit on file by Carrera that failure to take a Wheeler challenge in the circumstances of six out of eight Hispanics being peremptory was below the standard of care. The prosecution chose not to enter its own affidavit by anybody saying that it wasn't so. So we have undisputed claim of deficient performance, number one. Number two, we're talking about deficient performance in a California state trial. And in Snowe, we have exactly the same numbers, six out of eight were not peremptory. I don't remember in Snowe whether they were black or whether they were Hispanic or there were some other minority. But those are two formidable barriers to your claiming of no deficient performance. Are you claiming there was some strategic point that counsel for the defense was lying in wait by having all the Hispanics stricken from the jury so that he could make some other clever and up to the moment undiscovered argument? No, Your Honor, I respond to that in a couple of ways. First of all, there were two Hispanics, as Your Honor pointed out, that remained on the jury. Second of all, Snowe, again, was a Wheeler case. It was not an ineffective assistance of counsel case. So there's different, as the court is aware, Batson and Wheeler deal with not only the vindication of the defendant's rights, but also the equal protection rights of jurors to be free from racial animus on the part of the prosecutor. When we're talking about deficient... Edpo, we use Brecht versus Abramson. We determine whether there's a likelihood of a prejudicial outcome. Well, I think in terms of the deficient performance, the deficiency of counsel, Petitioner bears the burden of showing that counsel was objectively unreasonable. If counsel had made a motion and it had been granted, there would have been a new panel. How do we know that there would have been no Hispanics on the next jury that was in panel to try this case? And, of course, again, that presumes that Hispanic jurors are going to be more favorable to the Petitioner, which again gets into racial stereotyping. Counsel here had two... I'm sorry. To hypothesize it is true in every Batson case. You never know what the new veneer is going to look like, right? But that's not a reason for, you know, defeating the Batson claim. No, Your Honor, because Batson deals with the equal protection rights. There's three things in Batson. There's the equal protection rights of the jurors. There's the equal protection rights of the defendant. And then society's interest in having a jury that's picked without racial animus. But in Strickland, we're talking about the vindication of the client's right to a fair trial. But since Strickland decided 20 years ago or so, whenever it was, a number of cases have isolated ineffective performance that are, in effect, structural errors, right? Yes. Right? And this question, of course, of whether Batson's, I'll call it Batson deficiency, has not been addressed as far as I know. That's right. Whether it's structural or not. So the question is, there's a possibility it could be, because Batson itself is structural, right? Right. I think, Your Honor, I think you're... Why shouldn't a Strickland error based on Batson also be classified as structural error? Okay. And I think what Your Honor's getting at is prong two, then, the question of actual prejudice versus presumed prejudice. So I'll go to that now. The second prong, obviously, of Strickland is prejudice. And the question is, when you have structural error, let's assume that Strickland is structural error, Wheeler is structural error, what do you do when it's raised in the context of Strickland? If it was, if counsel had objected, we can, if we presume that that's structural error, then it would be prejudicial per se. You wouldn't have to show actual prejudice. But as I cited in the court in my supplemental authorities, Francis versus Henderson is a 1976 U.S. Supreme Court case, which has not been overruled as far as I know. And in that case, there was a structural error. It had to do with the systematic exclusion of blacks from the grand jury. The court says, yes, it's structural error, but you're raising it in a collateral proceeding, and you have to show actual prejudice. And that's exactly what we have here. There's also a case that I did not cite, which is a Ninth Circuit case, Van Sickle versus White. I commend this to the Court's attention. 166, Feb. 3, 1953, 1999, out of this circuit. In that case ‑‑ Is that in your papers? It is not, Your Honor. Well, then file with the deputy clerk a gum sheet that would serve on your papers. Yes, I will. I will, Your Honor. And in that case, Petitioner was denied his full allotment of peremptory challenges. Counsel did not object, and the court said, yes, Petitioner's due process rights were violated. Yes, this was structural error, but it's raised under Strickland, and you have to show actual prejudice. And Petitioner could not show actual prejudice, and the court affirmed. In other words, you cannot presume actual prejudice in a Strickland context, even if there were structural error in the state court? Exactly, Your Honor. The point being that if you raised a claim of, you know, failure to, you know, closing a courtroom improperly, for example, that's a good example because there are cases on that point which I think are cited in my supplemental authorities. Purvis, I believe, is the case. What was the so-called structural error involved in Van Sickle? Van Sickle, it was ‑‑ he didn't get his full allotment of peremptory challenges. But there are other cases. Some of the other cases had to do with the right to a public trial. The courtroom gets closed. Counsel doesn't object. And in the 11th Circuit, they've held that, and they cite this Francis v. Henderson, which I cited, the U.S. Supreme Court case. And they say, yes, we recognize if counsel had raised this, it's structural error, and it's reversible per se. But counsel didn't. And once you get to collateral review and you raise it under ineffective assistance, Strickland says very clearly you have to show actual prejudice. So, again, Petitioner spends a lot of time talking about Batson, talking about Wheeler. This is not a Batson‑Wheeler claim. It's a Strickland claim. All right. Well, what ‑‑ And you can't show actual prejudice here. I understand your argument, but going back to the actual jury with two Hispanics on the jury, what law do we look to to determine whether, as of the time of this state court trial, that that jury would have been a constitutionally impermissible jury? What do we look to? Well, I think a couple of things. I mean, I acknowledge that some of the cases that I cited and the district court cited were not in effect in 1983. But what that suggests is that the law was ‑‑ certainly the law was not crystal clear in 1983. And deficient performance is deficient performance. So you have to ‑‑ you know, we can't second guess counsel 27 years ago. So if you acknowledge that the case law was somewhat unsettled, you acknowledge that two Hispanics were on the jury, you acknowledge, which is true from the record, that counsel had two remaining peremptory challenges. How was it unsettled at the time of this trial? I mean, you know ‑‑ Well, Your Honor, in 85, there was a California Court of Appeal case, Boyd, which is cited by the district court. That case was tried in 83, so how could it be unsettled in 83 when the case was decided in 85? I guess what I'm suggesting is that if it was so clear in 83, then you wouldn't have had a subsequent court of appeal case in 85. Nothing had changed in the state's favor between 83 and 85. You know, Batson was 86. Wheeler was 78. I'm just suggesting in that interim period, the law was not crystal clear. Counsel had two remaining peremptories, which she didn't ‑‑ But the obviously controlling case that should guide counsel is Wheeler. I acknowledge that, Your Honor. But, again, it's IAC, and the question is, is I don't believe that counsel ‑‑ counsel's interest is in a fair trial for her client, a good jury for her client. We're just speculating to assume that if she had made a Wheeler motion and it had been granted and she had a whole new panel, that there would have been a jury more favorable for her client. Perhaps she liked this jury. Counsel, let me ask you a question. Is there any case that you know of that says that where the prejudice under Strickland is structural prejudice, not actual prejudice? A closed courthouse, a biased jury, that is not sufficient prejudice under Strickland. Is there any such case? Absolutely, Your Honor. I cited them. Francis v. Henderson is a United States Supreme Court case that I cited in my supplemental authority. In Francis v. Henderson ‑‑ That was the ‑‑ keeping blacks from the grand jury. Correct. Structural error. They said 425 U.S. at 538. Unconstitutional systematic exclusion of blacks from the grand jury, which we have already noted is a structural error. And so it said, nonetheless, in a collateral attack, you have to show actual prejudice, even though it's structural error. How would one go about showing actual prejudice, either in Francis v. Henderson or in this case? Would you get affidavits from persons who had been kicked off the jury and then give them a transcript of what happened at the jury trial and say, now, if you had been in the jury, how would you have voted? How would you have voted for the defense? Is that the way you ‑‑ has anybody ever attempted to do that? I don't know, and I acknowledge it would be extraordinarily difficult, but the United States Supreme Court surely was aware of that at the time of Henderson. In Fulminante, for instance, and other cases that discussed structural error, the courts were saying there are some errors as opposed to errors in the admission of evidence or the outbursts of counsel which could be corrected or could be weighed. There are some errors which invade the whole trial structure in a way that we can't put our fingers on, saying they did or did not cause an improper result. And we call those structural errors. And there were the typical types of structural errors where once they were established, you didn't have to prove actual prejudice because the nature of the error made the proof of actual prejudice so difficult. Isn't that what we have here? I don't believe so. How could Carrera have proved structural error? Could have proved actual prejudice? I acknowledge it would be virtually impossible. No, no, no. Imagine it. How could he have done it? I'm not sure that he could. But again, that would be true. And you would have no doubt that there was a structural error, but tough. You can't prove there's actual prejudice. Well, again, I mean, but the thing is, is that was true in Francis v. Henderson. And in the Eleventh Circuit case that I cited, also in Van Sickle v. White, which, again, I will provide to the Court. In that case, this Court, the Ninth Circuit, acknowledged that Petitioner's due process rights were violated. And they said, but there's no proof that a different jury would have not convicted him because of overwhelming evidence. So you would be back to the notion of once we see that not only there was a violation of the defendant's rights, I suppose there was a violation of the juror's rights who didn't get to serve, and a violation of society's rights in having a fair jury well composed of all members of the community. Once we admit all that, then we're saying, but since there are difficulties in proving that it would have had any particular result in the trial, then we throw up our hands and say, you win, but you lose. I wouldn't say that, Your Honor. I'd say this. I'd say that Strickland has to do with vindicating the defendant's right to a reliable result. And that's what Strickland is about. Batson and Wheeler are about different things, as is the right to a public trial. It's about different things. Strickland is fundamentally about the reliability of the result. A petitioner is entitled to a reliable result. If he can't show the result is unreliable, then why should he get a windfall? We should remember that structural error, presuming prejudice, really is a windfall to the defendant. If the court closes the trial to members of the public and the government's case is overwhelming against the defendant, we give the defendant a windfall, a new trial, in order to vindicate some other right, society's interest in an open proceeding. Without any proof that the defendant has really suffered, the defendant gets a windfall. But the Supreme Court did not do that in Strickland. In Strickland, they said, this is about the reliability of the result, and we're not going to give the defendant a windfall. The defendant has to show actual prejudice. And I acknowledge there is a split. There's a split of authority. Would the defendant have to show actual prejudice if the ineffective assistance of counsel were that defense counsel had not requested an open court? Yes. Yes, that's our position. The question is that for purposes of structural error, if counsel makes a contemporaneous objection, the defendant gets what I would characterize as a windfall, without any showing that he himself personally suffered. In Strickland, that's not the case. No, no. But there are exceptions, even in Strickland. For instance, isn't it correct that, say, if the IAC claim is based upon a conflict of interest? Absolutely, Your Honor. I acknowledge it's – Structural error, right? Yes, but again, that would – Prejudice required. But again, I think, again, that would be a situation where you couldn't have – It's a windfall. No, because there I think you don't have confidence in the reliability of the result, because somehow counsel – Wait a minute, wait a minute. Suppose that you say it's overwhelming. There's no question that the evidence is, you know, shows his guilt. And nothing the defense lawyer could have done, you know, to say, but, you know, he acted under a conflict of interest. Structural error, right? I acknowledge that. I acknowledge there's three instances that the Supreme Court talked about in Strickland. But they haven't expanded that. Counsel, let me go back to a case which your opposing counsel brought up, Snow. Where does Snow fit into this picture, so far as you're aware? Well, again, Snow, again, like all these cases, as Your Honors have pointed out, predate, postdate the trial. Snow is an 88 case in which – or 87, in which the California Supreme Court pretty much squashed this idea that if you leave a couple of minority jurors on, that you escape Wheeler. But, again, my point is that the law was unsettled until Snow cleared it up in 1987. This trial was in 1983. Counsel left two Hispanics. There were two Hispanics on the jury. She – based on the factual record, she had two peremptories remaining. One can only conclude that she liked this jury. The district court went through and pointed out some reasons why these jurors might have been struck. And so on that record, it's very hard to conclude that counsel was objectively unreasonable for not making the motion. And then, again, my – the argument about actual prejudice, and I cited cases to the Court, and I will provide that additional case. Can I just ask you to spend 60 seconds on the Confrontation Clause challenge? Absolutely, Your Honor. Our position is that the – and I don't need 60 seconds. The district court did a very thorough analysis of the other claims raised by Petitioner and concluded that fundamentally he cannot prevail because of harmless error analysis. The – I think the district court was very clear. Well, what about your point that, well, we need an evidentiary hearing before we even get to thinking about harmless error? Well, again, I don't think that the evidentiary hearing might clear up exactly what was said to Santana and by whom, but I don't think that changes the harmless error analysis. There is overwhelming evidence as cited by the district court that Petitioner was present at the scene, that he had blood on his clothing, that he participated in covering up evidence, that he made lots of incriminating statements while he was incarcerated, that he was gone from this party with the co-defendant at the time that the murders were committed. So I think as the district court aptly concluded, there's pretty compelling evidence that any error, confrontation clause error would be harmless. Thank you, Your Honor. Thank you, counsel. Mr. Bedrick, you have a little time left. Thank you, Your Honor. A few quick comments. First of all, the district court considered the question of what the standard of prejudice was, and the district court stated that prejudice wouldn't be established for these purposes if there were a prima facie case of a Wheeler-Batson violation. Therefore, it was the district court's position that the error was prejudicial per se. Can we review that de novo or under abuse of discretion? Whatever you wish, Your Honor. Yes. Turning to the question of what types of errors are prejudicial per se, I refer to the court to my supplemental authorities letter sent in last week, a long list of issues in which there's ineffective assistance of counsel found prejudicial per se. The closest we have from this circuit is Davis v. Woodford in 384F3rd. In that case, the ineffective assistance of counsel was the failure to move to exclude a biased juror, and that was found prejudicial per se. I have cited other cases in that letter where the problem, where the structural error involves the presence or absence of jurors on the petty jury, and in each one of those, it's been found prejudicial per se. My opponent tried to argue that there were cases from the 11th Circuit where the error was prejudicial per se. However, that is not the case. These are all Strickland cases? Yes. Every single case that I've cited in the supplemental authorities letter is a Strickland case. In addition, the law, the controlling law in the 11th Circuit, unlike what my respected opponent says, is Eagle v. Linehan. Cited in the briefs, under Eagle v. Linehan, the same question is here. Is the ineffective assistance for failure to present Batson, is that prejudicial per se, or do you have to show prejudice in the facts of the case? 11th Circuit says prejudicial per se. What about the Francis v. Henderson case? That appears to be the one and only exception to this long line of structural error and prejudicial per se. Supreme Court of the United States? Absolutely. However, that one error is, that one exception is limited to discrimination in the choosing of grand juries. Grand juries are a couple of steps removed from the petty jury, and the purpose of that grand jury ruling is not the same as the purpose in Batson. The key purpose in Batson is to protect the equal protection rights of the specific jurors who have ceded, questioned, and rejected. That issue doesn't exist in Francis and, therefore, should not apply here. And time has elapsed. Thank you, counsel. One request. My opponent has given a chance to cite to this Court a case I've never heard of before. Could I have a chance to respond? We'll determine that, counsel, after we read the case ourselves. Okay. Thank you. Thank you. The case just argued will be submitted for decision, and the Court will adjourn.
judges: Bennett, O'scannlain, Tashima